**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Granite State Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>CME Professional Services LLC,<br><br>Defendant. | No. CV-18-02488-PHX-JGZ<br><br>**ORDER** |

Pending before the Court is a Motion for Default Judgment filed by Plaintiff on October 25, 2018. (Doc. 18.) Defendant did not file a response. Having reviewed the motion and all filings in this matter, the Court will grant the Motion for Default Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a workers' compensation and employer's liability insurance policy for two separate periods of coverage. Plaintiff Granite State Insurance Company issued the policy to Defendant CME Professional Services LLC on or about August 6, 2015, to cover the period of August 2, 2015 to August 2, 2016 ("First Policy Period"). (Doc. 11, ¶ 16.) Per the policy's terms, Plaintiff provided Defendant with the estimated annual premium, including taxes and fees, of $727,502. (Doc. 11, Ex. A.)[1] The policy further provided that the final premium would be determined "after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates

---

[1] The insurance agreement clearly states that the premiums "shown on the Information page, schedules, and endorsements [are] an estimate." (Doc. 11-1, Ex. A.)

that lawfully apply to the business and work covered by this policy." (*Id.*) Between September 9, 2015 and May 26, 2016, Plaintiff issued several endorsements that increased the premium by a net $780,565. (Doc. 11, ¶¶ 18–24.) Plaintiff subsequently conducted two audits of Defendant's books and records for the First Policy Period. Based on the audits, Plaintiff calculated that the Defendant's premium should be increased by a net $66,014. (*Id.* at ¶¶ 25–28.) Ultimately, Plaintiff determined that the Defendant owed a total premium on the First Policy Period of $1,574,081. (Doc. 11, ¶ 29.) Defendant has paid $1,370,865.74 to Plaintiff towards the premium due for the First Policy Period. (Doc. 11, ¶ 30.)

On or about August 4, 2016, Plaintiff renewed the Policy for the policy period of August 2, 2016 to August 2, 2017 ("the Second Policy Period"). The total estimated annual premium for the Second Policy Period was $1,700,135. (*Id.* at ¶¶ 32–33.) Between October 4, 2016 and May 24, 2017, Plaintiff issued several endorsements and amended class codes, decreasing the premium by a net $968,625. (*Id.* at 34–41.) After conducting an audit, Plaintiff reduced the premium by $92,843. (*Id.* at ¶¶ 42–43.) The Plaintiff ultimately determined that the Defendant owed a total premium of $638,667 for the Second Policy Period. (*Id.* at ¶ 44.) Defendant has paid $544,921.42 to Plaintiff for the premium due for the Second Policy Period. (*Id.* at ¶ 45).

Plaintiff billed Defendant on April 6, 2017 for the $203,215.26 due on the First Policy Period (Doc. 18-2) and on October 30, 2017 for the $93,745.58 due on the Second Policy Period. (Doc. 18-3.) Plaintiff also sent Defendant demand letters requesting payment. (Doc. 18.)[2] Defendant has failed to provide payment regarding either invoice. (Doc. 11, ¶¶ 51–54.)

On August 6, 2018, Plaintiff initiated this action, seeking contractual damages in the amount of $296,256.84, pretrial and posttrial interest, and attorney's fees and costs.

---

[2] In support of its Motion, Plaintiff attaches a Declaration from Aleksandra Fish Ashby, who is a custodian of records for Plaintiff. (Doc. 18-1.) Ms. Ashby avers that pursuant to the Policy, Plaintiff conducted audits of Defendant's books and records, and issued the April 6 and October 30, 2017 invoices (attached to the Declaration) to Defendant for the outstanding premium balance due. (*Id.* at ¶¶ 5–8.)

(Doc. 1.) On August 13, 2018, Plaintiff filed an Amended Complaint to address subject matter jurisdiction. (Docs. 9 & 11.)[3] Defendant was served with the Amended Complaint and Summons on September 7, 2018. (Doc. 14.) Defendant failed to respond or answer. Thereafter, Plaintiff requested the Clerk of the Court to enter default against Defendant (Doc. 15), which the Clerk entered on October 2, 2018. (Doc. 16.) Plaintiff now seeks entry of default judgment against Defendant.

## DISCUSSION

**A. Default Judgment**

After entry of default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. The decision to enter a default judgment is a matter left to the sound discretion of the court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In its determination whether to enter default judgment, the court may consider as factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Once default has been entered, the court may take as true all factual allegations in Plaintiff's Complaint, except those relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987). However, that does not relieve the plaintiff of its duty to plead specific allegations, as "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DirecTv, Inc. v. Hoa Huynh*, 503 F.3d 847, 855 (9th Cir. 2007).

---

[3]Based on the allegations in the Amended Complaint, the Court concludes that it has subject matter jurisdiction over this action and personal jurisdiction over Defendant. The amount in controversy in this action exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332. Defendant CME is a LLC registered under Indiana law with a principal place of business in Arizona. Its only two members are citizens of Arizona. Plaintiff Granite State is organized under Illinois state laws and retains a principal place of business in New York.

Upon consideration of the *Eitel* factors, the Court concludes that entry of default judgment against Defendant CME Professional Services is proper.

### 1. The possibility of prejudice to Plaintiff

Plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471–72. Plaintiff provided insurance coverage, which Defendant accepted, and for which Defendant has failed to pay the $296,960.84[4] balance owed. Plaintiff attempted to resolve the matter without judicial involvement by sending invoices and demand letters. Defendant's failure to remit payment, along with its failure to respond to or answer the Complaint makes it unlikely Plaintiff could recover absent entry of default judgment. The Court concludes that Plaintiff would suffer prejudice if its motion for default judgment was denied because it would be "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). This factor greatly weighs in favor of granting default judgment.

### 2. Merits of the Substantive Claim & Sufficiency of the Complaint

*Eitel* "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Phillip Morris U.S.A., Inc. v Castworld Prods. Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (internal quotation marks omitted). Plaintiff's Complaint is grounded in a claim for breach of contract. The elements of a breach of contract claim are (1) a contract exists, (2) breach of the contract, and (3) resulting damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. App. 2004). Plaintiff's Complaint also advances an unjust enrichment theory, which provides a remedy when a party has received a benefit at another's expense, and the benefitted party should compensate the other. *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. App. 2012). Plaintiff has presented evidence demonstrating the existence of a contract with Defendant, Defendant's breach of the contract, and Plaintiff's resulting damages. The invoices dated April 6, 2017 and October 30, 2017 provided Defendant with notice of insurance premiums owed under the contract. Thus, the Court

---

[4] Plaintiff has provided invoices showing $296,960.84 due. In its Amended Complaint, Plaintiff seeks a lesser amount of $296,256.84; the invoiced amount is reduced to account for work performed in Oregon, which is not at issue in this lawsuit.

- 4 -

concludes Plaintiff has stated a claim for breach of contract. Further, because Defendant received the insurance coverage under the policy, failure to fully compensate Granite State would unjustly enrich Defendant.

### 3. Sum at Stake

This factor requires the Court to consider the amount of money at stake in relation to the seriousness of a defendant's conduct. *Eitel*, 782 F.2d at 1471–72. Here, Defendant has failed to fully pay insurance premiums owed under its contractual agreement with Plaintiff, despite efforts by Plaintiff to recover the full amount owed. The amount of money at stake is substantial. Plaintiff requests payment of the $296,256.84 owed for the insurance coverage, as well as prejudgment interest pursuant to A.R.S. § 44.1201 and post-judgment interest pursuant to 28 U.S.C. § 1961(a). Plaintiff's request is grounded in the contract and supported by law and Defendant would be unjustly enriched absent payment. This factor weighs in favor of default judgment.

### 4. Possible Dispute Concerning Material Facts

The Court next considers the likelihood of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471–72. Here, there is little possibility of dispute concerning material facts. Defendant has failed to file an answer or response to the Plaintiff's Complaint. Nor has Defendant otherwise presented any evidence. On entry of default, the court may accept as true all well-pleaded facts in the Complaint, except those relating to damages, and any later provided evidence in the form of affidavits and exhibits. *See Televideo Sys., Inc.*, 826 F.2d at 917–18. Plaintiff's Amended Complaint, Motion, and attached exhibits and declaration establish the existence of the policy, its terms, audits, calculation of the premiums due, Defendant's breach of the contract, and the resulting damages. Upon review of the record, the Court finds there is little likelihood of dispute concerning the contract terms or the amounts due under the policy. Thus, this factor weighs in favor of default judgment.

### 5. Excusable Neglect

Under this factor, the Court evaluates whether the failure to answer or defend is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. In the instant case, Defendant received

- 5 -

notice of Plaintiff's First Amended Complaint on September 7, 2018 (Doc. 14), multiple demand letters prior to the Court's involvement (Doc. 18), and two invoices for the policy amounts owed. Defendant failed to respond to the First Amended Complaint, the Entry of Default on October 2, 2018, and this pending Motion filed on October 25, 2018. Under these circumstances, the possibility of excusable neglect appears to be remote. Accordingly, this factor weighs in favor of granting default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

Generally, default judgments are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, because a discretionary standard is applied, "default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D 431, 432 (C.D. Cal. 1999). Indeed, the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not dispositive. *Cal. Sec. Cans*, 238 F.Supp.2d at 1177. Here, Defendant's failure to defend this matter makes a decision on the merits impractical, if not impossible. Therefore, the policy encouraging decisions of cases on their merits does not weigh against granting default judgment here.

## B. Damages

Having determined that entry of default judgment is proper, the Court now turns to the matter of damages. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because the allegations in the complaint are taken as true "[i]njury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Black & Decker (U.S.), Inc. v. All Spares, Inc.*, 2010 WL 3034887, *3 (D. Ariz. Aug. 3, 2010) (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). While the Court is not required to issue findings of fact as to liability, it must do so as to damages. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

### 1. Direct damages

The Court finds that Granite State's request for damages in the amount of

$296,256.84 is appropriate and the requested relief naturally arises out of Defendant's breach of contract. The insurance-coverage agreement provided an estimated premium of $727,502 for the First Policy Period. (Doc. 11, Ex. A.) Between September 9, 2015 and May 26, 2016, Granite State issued several endorsements that increased the premium by a net $780,565. (Doc. 11, Ex. B–H.) After conducting audits on November 15, 2016 and March 31, 2017, the premium increased by a net $66,014. (Doc. 11, Ex. I–J.) The resulting final premium was $1,574,081, which was invoiced to Defendant on April 6, 2017. (Doc. 18-2.) The invoice reflects payments received totaling $1,370,865.74, and Plaintiff's custodian of records avers as to the authenticity of the invoice. (Docs. 18-1 & 18-2.) Thus, Plaintiff has demonstrated the total amount outstanding for the First Policy Period is $202,657.26.[5]

The insurance-coverage agreement provides an estimated premium of $1,700,135 for the Second Policy Period. (Doc. 11, Ex. K.) Between October 4, 2016 and May 24, 2017, Granite State issued several endorsements that decreased the premium by a net $968,625. (Doc. 11, Ex. L–S.) After conducting an audit on October 25, 2017, the premium was decreased by $92,843. (Doc. 11, Ex. T.) The resulting final premium was $638,667, which was invoiced to Defendant on October 30, 2017. (Doc. 18-3.) The invoice reflects payments received totaling $544,921.42, and Plaintiff's custodian of record avers as to the authenticity of the invoice. (Docs. 18-1 & 18-3.) Thus, Plaintiff has demonstrated the total amount outstanding for the Second Policy Period is $93,599.58.[6]

The insurance agreement makes clear that the premiums "shown on the Information Page, schedules, and endorsements" are merely an estimate. The final premium reflects "the proper classifications and rates that lawfully apply."

**2. Prejudgment interest**

Federal courts sitting in diversity apply state law in assessing prejudgment interest.

---

[5] Plaintiff does not seek recovery for $558 of the invoiced amount of $203,215.26 because it pertains to work performed in Oregon, which is not at issue in this matter.

[6] Plaintiff similarly does not seek $146 of the invoiced amount of $93,745.58 because it relates to work performed in Oregon.

*American Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996). Under Arizona law, "prejudgment interest on a liquidated claim is a matter of right." *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir. 2001). A claim is liquidated if the plaintiffs provide a basis for precisely calculating the amounts claimed. *Gemstar Ltd. v. Ernst & Young*, 917 P.2d 222, 237 (Ariz. 1996). Further, prejudgment interest begins when the creditor provides to the debtor "sufficient information and supporting data so as to enable the debtor to ascertain the amount owed." *AMHS*, 258 F.3d at 1103 (quoting *Homes & Son Constr. Co. Inc. v. Bolo Corp.*, 526 P.2d 1258, 1261 (Ariz. App. 1974). Arizona law states that interest on a judgment shall be assessed at the lesser of 10% per annum or at a rate per annum that is "equal to one per cent plus the prime rate." A.R.S. § 44-1201(b) & (f).

Here, Plaintiff has precisely calculated the amounts owing under the Policy based on the insurance agreement, endorsements, audits, and amounts deducted for work performed in Oregon, and the total amount owed is readily ascertainable: $296,256.84. The invoices dated April 6, 2017 and October 30, 2017 provided clear information to the Defendant as to the amounts owed. The prime rate as of January 30, 2019, as published by the Federal Reserve System is 5.50%. The prejudgment interest rate is therefore 6.50%. The Court finds that Granite State is therefore entitled to prejudgment interest of 6.5% per annum on $202,657.26 from April 6, 2017 through date of judgment, and 6.5% per annum on $93,599.58 from October 30, 2017 through date of judgment.

### 3. Post-judgment interest

Post-judgment interest is governed by federal law, which provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see American Tel. & Tel. Co.*, 98 F.3d at 1209. Post-judgment interest is calculated from the date of the judgment entry, at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week proceeding. 28 U.S.C. § 1961(a). It shall be computed daily to the date of payment and compounded annually. *Id.* at § 1961(b). Post-judgment interest is calculated at the rate of 2.59% on the aggregate of $296,256.84

plus prejudgment interest.

### 4. Attorney costs and fees

Finally, Granite State seeks recovery of reasonable attorney's fees and costs. Arizona law allows the court to award the "successful party reasonable attorney fees" in any "contested action arising out of a contract." A.R.S. § 12-341.01. It also mandates that the "successful party to a civil action" recover all "costs expended or incurred." A.R.S. § 12-341. The trial court has substantial discretion in determining who is a successful party. *Assyia v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 675 (Ariz. App. 2012). However, once the prevailing party is determined, the awarding of costs is mandatory. *McEvoy v. Aerotek, Inc.*, 34 P.3d 979, 981 (Ariz. App. 2001). Plaintiff's Amended Complaint includes meritorious claims, and Defendant's failure to respond resulted in entry of default. Therefore, Plaintiff is the successful party, entitling it to recovery of costs.

However, the recovery of attorney's fees requires the party's success in a "contested action." A.R.S. § 12-3401.01. A contested action is one in which the defendant has appeared and generally defends against the claims and demands made by the plaintiff. *Morrison v. Shanwick Int'l Corp.*, 804 P.2d 768, 775 (Ariz. App. 1990); *See also BRT Funding, LLC v. Carlsbad Dev. I, LLC*, 2009 WL 2486008, *2 (D. Ariz. Aug. 12, 2009). Here, Defendant failed to appear or respond to any of Plaintiff's demands. While Granite State prevailed, it did so in an uncontested action. Therefore, attorney fees are not recoverable.

## CONCLUSION

Accordingly, IT IS ORDERED:

Plaintiff's Motion for Default Judgment (Doc. 18) is GRANTED IN PART AND DENIED IN PART. Judgment is granted in favor of Plaintiff Granite State Insurance Company and against Defendant CME Professional Services, LLC, in the principal amount of $296,256.84; along with prejudgment judgment interest on $202,657.26 at the rate of 6.5% per annum from April 6, 2017 to date of judgment, and prejudgment interest on $93,599.58 at the rate of 6.5% per annum from October 30, 2017 to date of judgment; along

with post-judgment interest at the rate of 2.59% per annum from the date of judgment until paid, upon Plaintiff's entire judgment award (including the principal amount and prejudgment interest).

IT IS FURTHER ORDERED that Plaintiff's request for attorney's fees pursuant to A.R.S. § 12-341.01 is DENIED.

IT IS FURTHER ORDERED that Plaintiff's request for costs pursuant to A.R.S. § 12-341 is GRANTED. Plaintiff shall file its bill of costs within fourteen days of the entry of judgment.

IT IS FURTHER ORDERED that the Clerk of Court enter judgment accordingly and close this case.

Dated this 30th day of January, 2019.

_____
Honorable Jennifer G. Zipps
United States District Judge